IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  11-cv-00367-WYD-KLM

RYAN ALEXANDER PETTIGREW,

       Plaintiff,

v.

ARISTEDES ZAVARES [sic], individually and as Executive Director,
SUSAN JONES, individually and as Warden,
LARRY REED, individually and officially as Warden,
DENT, individually and as Intelligence Officer Sgt.,
SANDRA CROSS, individually and as Intelligence Officer Sgt.,
MACAIN HILDEBRAND, individually and as Programs Major,
MARY MCCORMICK, individually and as Programs Supervisor,
DARRYL PROFFIT, individually and as Regional Coordinator Faith and Citizens
Programs,
DALE BURKE, individually and as Hearings Officer,
COMFORT, individually and as Correctional Officer, and
ROYBAL, individually and as Shift Commander Lt.,

       Defendants.
_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

       This matter is before the Court on **Defendants' Motion to Dismiss** [Docket No. 40;

Filed August 1, 2011] (the "Motion").  Pursuant to 28 U.S.C. § 636(b)(1) and D.C. Colo. L.

Civ. R. 72.1C.3, the Motion has been referred to this Court for recommendation [#47].

Plaintiff filed a Response in opposition to the Motion on August 22, 2011 [#42], and

Defendants did not file a Reply.  Having reviewed the filings, the case record, and the

applicable law, the Court is sufficiently advised in the premises.  For the reasons stated

below, the Court **RECOMMENDS** that the Motion be **GRANTED** and Plaintiff's Amended

Complaint [#33] be **DISMISSED WITH PREJUDICE**.

## I.  Factual and Procedural Background

Plaintiff, who proceeds in this matter *pro se*, is a Colorado state prisoner presently incarcerated at the Colorado State Penitentiary in Canon City, Colorado.  Plaintiff initiated this lawsuit pursuant to 42 U.S.C. § 1983 on February 11, 2011.  *Compl.*, [#1].  After receiving permission from the Court, Plaintiff filed an Amended Complaint, which is the operative pleading, on June 20, 2011.  [#33].  Plaintiff asserts seven claims for relief, summarized by the Court as follows:

Claim One: detention in a strip cell for 24 hours in violation of Plaintiff's Eighth Amendment rights, against Defendants Zavaras, Jones, Roybal, and Comfort ([#33] at 7-8);

Claim Two: incarceration in administrative segregation from January 2005 through March 2010, and from December 2010 through the present, which has exacerbated Plaintiff's mental illnesses in violation of his Eighth Amendment rights,[1] against Defendants Zavaras, Reed, Jones, Dent, and Cross (*Id.* at 9-13);

Claim Three: denial of a religious diet and communion pursuant to Plaintiff's designation as "Christian Identity" from 2005 through 2010, in violation of the Free Exercise Clause, against Defendants McCormick, Reed, Hildebrand, Proffit, and Zavaras (*Id.* at 14-15);

Claim Four: denial of a religious diet and communion in violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), against Defendants Reed, Jones, McCormick, Hildebrand, and Proffit (*Id.* at 16);

Claim Five: denial of a Passover diet and communion to Plaintiff pursuant to his

---

[1]  The Court construes this claim as invoking the Eighth Amendment prohibition of deliberate indifference to a prisoner's serious medical needs and the Eighth Amendment protections related to general conditions of confinement.

designation as "Christian Identity," and permitting a Passover diet to Jewish inmates and communion to Catholic inmates, in violation of Plaintiff's equal protection rights, against Defendants McCormick, Hildebrand, and Proffit (*Id.* at 17);

Claim Six: improper limitation of two books per inmate, thereby restricting Plaintiff's access to book-based religious study, in violation of the Free Exercise Clause and RLUIPA, against Defendants Zavaras, Jones, McCormick, and Hildebrand (*Id.* at 18-19); and

Claim Seven: a violation of Plaintiff's rights pursuant to the Fourth and Fourteenth Amendments arising from the imposition of a restitution order by an internal hearing officer on December 16, 2010, against Defendants Burke and Zavaras (*Id.* at 20).

Plaintiff requests compensatory, punitive, and nominal money damages and various forms of injunctive relief.  (*Id.* at 22-23).

Defendants responded to Plaintiff's Amended Complaint with the Motion at issue, raising Fed. R. Civ. P. 12(b)(1) and (6) as grounds for dismissal of Plaintiff's claims.  [#40] at 2-3.  Defendants present nine arguments: 1) Plaintiff may not assert claims for monetary damages against Defendants in their official capacities pursuant to the Eleventh Amendment (*Id.* at 3-4); 2) Plaintiff fails to allege the requisite personal participation against Defendants Jones, Reed,[2] Zavaras, Hildebrand, McCormick, Proffit, Dent, and Cross (*Id.* at 4-6); 3) Claims Two, Three, Four, Five, and Six are barred by the statute of limitations; 4) Plaintiff's claim for damages is limited by the physical injury requirement stated in the Prison Litigation Reform Act ("PLRA") (*Id.* at 7-8); 5) Plaintiff's Claim One fails to state a claim on which relief may be granted (*Id.* at 8-11); 6) Plaintiff's Claim Two fails to state a claim on which relief may be granted (*Id.* at 12-13); 7) Plaintiff may not recover money

---

[2] Defendants refer to Defendant Reed as "Reid"; however, the Court will utilize the spelling listed on the docket.

damages against Defendants in their individual capacities under RLUIPA (*Id.* at 13-14); 8) Plaintiff's Claim Seven fails to state a claim on which relief may be granted (*Id.* at 14); and 9) Defendants are entitled to qualified immunity (*Id.* at 14-15).

Plaintiff timely filed a Response to the Motion on August 22, 2011 [#42].  The content of the Response exceeds the page limitations set forth in Chief Judge Daniel's Practice Standards.  *See* WYD Practice Standards, § II, para. E (May 11, 2011).  However, in light of the Court's obligation to *pro se* litigants as further described below, the Court accepts the Response as filed.  Defendants did not submit a Reply.

The Court first explains the standards applicable to the Motion at issue.  Then, the Court addresses each of Defendants' challenges to Plaintiff's Amended Complaint, and Plaintiff's respective responses to those challenges, in turn.

## II.  Standards of Review

### A.   Rule 12(b)(1)

The purpose of a motion to dismiss pursuant to Rule 12(b)(1) is to test whether the Court has jurisdiction to properly hear the case before it.  Dismissal of a federal claim for lack of subject-matter jurisdiction "is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974)).

A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: a facial attack or a factual attack.  When reviewing a facial attack on a complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true.  *Holt v. United States*,

46 F.2d 1000, 1002 (10th Cir. 1995).   When reviewing a factual attack on a complaint supported by affidavits or other documents, the Court makes its own factual findings and need not convert the motion to one brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *Id.* at 1003.

**B.    Rule 12(b)(6)**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed R. Civ. P. 12(b)(6) (A complaint may be dismissed for "failure to state a claim upon which relief can be granted."). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).

To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the

5

elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (internal quotation marks omitted).

The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level."  *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not shown that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a). *Iqbal*, 129 S. Ct. at 1950 (quotation marks and citation omitted).

**C.** *Pro Se* **Plaintiff's Filings**

When considering Plaintiff's Amended Complaint [#33] and Response [#42], the Court is mindful that it must construe the filings of a *pro se* litigant liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be a *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [a *pro se* litigant's] complaint or construct a legal theory on [his] behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).  In addition, *pro se* litigants must follow the same procedural rules that govern other litigants.  *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

**III.  Analysis**

**A.    Eleventh Amendment Immunity**

Defendants ask the Court to dismiss Plaintiff's claim for money damages against Defendants in their official capacities pursuant to Eleventh Amendment immunity.  [#40] at 4.  In his Response, Plaintiff clarifies that he sues the Defendants in their individual

6

capacities for monetary damages and in their official capacities for injunctive relief. [#42] at 1. Thus, this issue is moot. The Court therefore construes Plaintiff's claims against Defendants in their individual capacities for money damages and in their official capacities for injunctive relief.

## B.   Statute of Limitations

Actions brought pursuant to 42 U.S.C. § 1983 are subject to the general personal injury limitation period of the state in which the action arose. *Wilson v. Garcia*, 471 U.S. 261, 280 (1985); *Hunt v. Bennett*, 17 F.3d 1263, 1265-66 (10th Cir. 1994). In Colorado, a two-year statute of limitations applies. *See* Colo. Rev. Stat. § 13-80-102(1)(g), (i) (creating a two-year limitation period for "[a]ll actions upon liability created by a federal statute where no period of limitation is provided in said federal statue" and for "[a]ll other actions of every kind for which no other period of limitation is provided"); *Blake v. Dickason*, 997 F.2d 749, 750-51 (10th Cir. 1993) (applying Colo. Rev. Stat. § 13-80-102 to a § 1983 claim).

By contrast, federal law rather than state law determines when a cause of action accrues. *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 968-69 (10th Cir. 1994). Specifically, claims brought pursuant to § 1983 "accrue, for the purpose of the statute of limitations, when the plaintiff knows or has reason to know of the injury which is the basis of [the] action." *Hunt*, 17 F.3d at 1266 (quoting *Johnson v. Johnson County Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991)). A plaintiff may have knowledge of an injury even if he is unaware of all of the evidence ultimately relied on for his cause of action. *Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628, 632 (10th Cir. 1993).

Once a defendant satisfies the initial burden to show that a claim is untimely, the burden shifts to the plaintiff to establish a later accrual date or to show that there is a basis

to toll the accrual date. *Aldrich v. McCulloch Props. Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980).  While the statute of limitations is an affirmative defense, the issue may be resolved on a motion to dismiss where the application of the limitations period is apparent on the face of the operative complaint. *See Dummar v. Lummis*, 543 F.3d 614, 619 (10th Cir. 2008).

Plaintiff initiated this lawsuit on February 11, 2011.  [##1, 2, 3, 4].  Thus, pursuant to the applicable statute, all claims accruing before February 11, 2009, are outside of the limitation period. *See* Colo. Rev. Stat. § 13-80-102(1)(g), (i) (creating a two-year limitation period).  Concerning his Claim Two, Plaintiff explains in his Amended Complaint that he has been in administrative segregation from January 2005 through August 2009, and again from December 2010 through the present.  [#33] at 9, 10.  Plaintiff's objection to his placement in administrative segregation arises from his "Bipolar Disorder, a serious mental illness." *Id.* at 9.  Plaintiff alleges that a doctor with the facility's mental health staff, Dr. Lampela, conducted an evaluation of Plaintiff on August 5, 2008, which resulted in a recommendation that Plaintiff be permitted to join a "mental health program." *Id.* at 10. Plaintiff asserts that he was not placed in the program, but based on his gang involvement, was returned to administrative segregation, despite the doctor's recommendation. *Id.*

Regarding his Claims Three, Four, and Five, Plaintiff states that he submitted written requests for communion and Passover religious diets beginning in 2005.  [#33] at 14. Plaintiff identifies April 6, 2007, February 25, 2008, and March 22, 2008, as specific dates on which he filed grievances related to this issue. *Id.* at 14, 16, 17.  As to Plaintiff's Claim Six, Plaintiff explains that the two book limit was imposed from April 2005 to May 2010. Plaintiff avers that he filed grievances related to this issue on January 9, 2009, and February 6, 2009, which were denied on January 20, 2009, and February 10, 2009,

respectively.  *Id.* at 18.

Given the above-stated allegations and dates contained in the Amended Complaint, Defendants argue that, regarding Claim Two, the accrual dates are in 2005 as to Defendant Reid and in 2007 as to Defendant Jones, based on the dates that each Defendant commenced their employment in the position of Warden of the facility.  [#40] at 7. Regarding Claims Three, Four, and Five, Defendants contend that the accrual dates are the dates on which Plaintiff filed grievances as identified in the Amended Complaint: March 14, 2008, April 7, 2008, and September 10, 2008, respectively.  *Id.*  Finally, as to Claim Six, Defendants aver that January 20, 2009 (and perhaps February 10, 2009) are the dates Plaintiff associates with grievance denials related to this claim, and are thus accrual dates for purposes of the statute of limitations.  *Id.*  Therefore, Defendants assert that Claims Two, Three, Four, Five, and Six fall outside of the statue of limitations period, because the dates on which the claims accrued occurred before February 11, 2009.

Defendants have satisfied their initial burden of demonstrating that Plaintiff's Claims Two, Three, Four, Five, and Six are untimely.  The burden thus shifts to Plaintiff to establish a later accrual date or to raise a basis for tolling the accrual date.  *See Aldrich*, 627 F.2d at 1041 n.4.  In his Response, Plaintiff recognizes that he "challenges incidents before the February 11, 2009 cut off," but contends that the continuing violation doctrine applies to his Claims Two, Three, Four, Five, and Six.  [#42] at 5-6.  Plaintiff avers that "all incidents are related to present constitutional violations," thus the statute of limitations should not preclude these Claims.  *Id.* at 6.  The Court disagrees.

 Plaintiff is incorrect in his suggestion that the Tenth Circuit has accepted the application of the continuing violation doctrine to cases brought pursuant to Section 1983. [#42] at 5.  The Court of Appeals, in its own words, has "never specifically held the

continuing violation theory applies to claims brought under § 1983." *Brock v. Herbert*, 435 F. App'x 759, 762 n.5 (10th Cir. 2011).   The continuing violation doctrine is rooted in employment discrimination law, and has been recognized as "a creature of the need to file administrative charges" as required by Title VII.   *Houck v. City of Prairie Village, Kan.*, 166 F.3d 1221, 1998 WL 792154, at *1 (10th Cir. 1998) (unpublished).   "The doctrine is premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated."   *Id.* at *2 (internal quotations and citation omitted).   Therefore, "a continuing violation claim fails if the plaintiff knew, or through the exercise of reasonable diligence would have known, [that his rights were being violated] at the time the earlier events occurred."   *Wood v. Milyard*, 414 F. App'x 103, 106 (10th Cir. 2011) (quoting *Davidson v. America Online, Inc.*, 337 F.3d 1179, 1184 (10th Cir. 2003)).

The Court finds that Plaintiff's Claims Two, Three, Four, Five, and Six accrued outside of the statute of limitations and should be dismissed as time-barred.   Plaintiff premises Claim Two on his alleged incarceration in administrative segregation from January 2005 through August 2009, and again from December 2010 through the present. The time period of January 2005 through August 2009 includes the cut-off date for the limitations period (February 11, 2009); however, the fact that the detention commenced in January 2005 leads the Court to believe that Plaintiff knew of the conditions he now challenges nearly four years before the limitations period expired.   Furthermore, Plaintiff does not allege a distinction in the conditions of administrative segregation during either time period.   Thus, the conditions Plaintiff complains of, that is, 23 hour lockdown, limited sunlight, limited human contact, and the resulting alleged harm to his mental health, were allegedly as present in January 2005 as they are currently.   Plaintiff knew, or at the least,

through the exercise of reasonable diligence would have known, that these conditions allegedly in violation of his constitutional rights existed far before the expiration of the statute of limitations.  Therefore, regardless of the application of the continuing violation doctrine to the facts at hand, Plaintiff's Claim Two accrued outside of the statute of limitations and should be dismissed as time-barred.

Concerning Plaintiff's Claims Three, Four, and Five asserting violations of the Free Exercise Clause, RLUIPA, and the Equal Protection Clause arising from the alleged denial of certain religious meals, Plaintiff admits that he made requests for these religious meals beginning in 2005.  [#33] at 14.  Plaintiff states he submitted grievances on April 6, 2007, February 25, 2008, and March 22, 2008, regarding meals for Passover, Pentecost, and personal communion.  *Id.* at 14-15.  According to Plaintiff, these grievances were respectively responded to on April 6, 2007, denied on April 7, 2008, and denied on March 14, 2008.  *Id.*  Clearly, Plaintiff knew that his asserted rights associated with religious meals and communion were allegedly being violated as early as April 6, 2007.  As stated above, even if the continuing violation doctrine applied conclusively to Section 1983 claims, Plaintiff's knowledge of his pleaded constitutional deprivations at the time of the earlier events precludes his assertion of the continuing violation doctrine at this time.  *See Wood*, 414 F. App'x at 106; *Rueb v. Zavaras*, No. 09-cv-02817-REB-MEH, 2011 WL 839320, at *5 (D. Colo. Mar. 7, 2011) (in applying continuing violation doctrine to Section 1983 claim, finding that because the plaintiff admitted he had been subject to the challenged correctional facility policies "for many years," he "knew or should have known of their existence well before [the limitations cut-off]," and doctrine did not preclude dismissal of claims as time-barred).  Therefore, the Court recommends that Plaintiff's Claims Three, Four, and Five be dismissed as outside of the applicable statute of limitations.

Concerning Plaintiff's Claim Six, again Plaintiff explains that the alleged violation of RLUIPA related to the facility's two-book limit began in 2005. [#33] at 18. Plaintiff avers that he filed a grievance as to this limit on January 9, 2009. *Id.* This grievance was denied on January 20, 2009, thus Plaintiff filed a step two grievance on February 6, 2009, which was denied on February 10, 2009. *Id.* Similar to his Claims Three, Four, and Five, the Court finds that Plaintiff knew of the asserted RLUIPA violation likely as early as 2005, but certainly as early as January 9, 2009. The Court recognizes that this date is only one month outside of the statute of limitations, but the statute of limitations is strictly applied in the absence of equitable tolling, which is not at issue here. *E.g., Green v. Doe*, 260 F. App'x 717, 719 (5th Cir. 2007) (citation omitted); *see also Brock*, 435 F. App'x at 762-63 ("The doctrine does not allow a plaintiff to challenge discrete acts of wrongful conduct which occurred outside of the statute of limitations."); *Fogle v. Slack*, 419 F. App'x 860, 864-65 (10th Cir. 2011) (claim involving discrete decisions or discrete conduct makes the continuing violation doctrine inapplicable). Thus, the Court recommends that Plaintiff's Claim Six be dismissed as outside of the applicable statute of limitations.[3]

## C.   Personal Participation

"Individual liability under [42 U.S.C.] § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) (citing *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir.1996)); *Bennett v. Passic*,

---

[3]   In any event, in consideration of the well-established case law governing correctional facility's authority to regulate the amount of personal property retained by an inmate, even if the Court permitted this claim to proceed, it would likely fail on its merits. *See, e.g., Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir. 1999) (upholding correctional facility's regulation of quantity and type of property in inmate's cells, as applied to hobby and legal materials); *Green v. Johnson*, 977 F.2d 1383, 1390 (10th Cir. 1992) (upholding "prison rules permitting inmates two cubic feet of legal materials in their cells").

545 F.2d 1260, 1262-63 (10th Cir.1976) ("Personal participation is an essential allegation in a Section 1983 claim." (citations omitted)).   A defendant was personally involved in an alleged constitutional violation only if there is an "affirmative link" between his or her conduct and the described violation. *Stidham v. Peace Officer Stds. & Training*, 265 F.3d 1144, 1156 (10th Cir. 2001).   Because of the "affirmative link" requirement, a defendant in a position of general supervisory authority cannot be held vicariously liable for constitutional violations committed by his or her subordinates. *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) ("Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights."); *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) ("[S]upervisor status by itself is insufficient to support liability." (citing *Rizzo v. Goode*, 423 U.S. 362, 376 (1976))); *Ruark v. Solano*, 928 F.2d 947, 950 (10th Cir. 1991) ("'[T]here is no concept of strict supervisor liability under section 1983.'" (citation omitted)).

Defendants ask the Court to dismiss Defendants Jones, Reed, Zavaras, Hildebrand, McCormick, Proffit, Dent, and Cross because Plaintiff fails to allege the requisite personal participation of these individuals.   Pursuant to the analysis stated above regarding the statute of limitations, only Plaintiff's Claims One and Seven remain as timely.   Plaintiff brings Claim One against Defendants Zavaras, Jones, Roybal, and Comfort, and Claim Seven against Defendants Burke and Zavaras.   Thus, the Court evaluates Defendants' argument regarding personal participation as to Defendants Jones, Reed, and Zavaras only.

In his Response, Plaintiff asserts that Defendant Zavaras personally participated in the alleged constitutional deprivations due to his responsibility to develop and implement administrative regulations ("AR"), namely AR 600-08, 600-01, and 600-02. *Id.* at 2.  Plaintiff

13

contends that Defendants Jones and Reed are likewise allegedly liable pursuant to AR 100-20, based on their failure to train subordinates properly and for their failure to implement regulations (including "OM 650-102" governing strip cells) not in violation of the Constitution. *Id.* at 3, 4.

Courts have explained that a defendant in a supervisory position may be personally involved in an alleged constitutional violation committed by his or her subordinates in two situations. First, supervisor liability may arise when the supervisor was personally involved in directing the subordinates to take the action that resulted in the alleged constitutional violation. *Woodward v. City of Worland*, 977 F.2d 1392, 1400 (10th Cir. 1992). Second, supervisor liability may arise when the supervisor had actual knowledge that the subordinates were committing the alleged constitutional violation and acquiesced in its commission. *Id.* (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990) (stating that supervisor liability requires "allegations of personal direction or of actual knowledge and acquiescence")). However, the simple fact that a supervisor knew of and acquiesced in a constitutional violation committed by the subordinates may no longer establish that he or she was personally involved in the violation. *See Arocho v. Nafziger*, 367 F. App'x 942, 947 n.4 (10th Cir. 2010) (citing *Iqbal*, 129 S. Ct. at 1949).

As described, Plaintiff argues that Defendants Zavaras, Jones, and Reed personally participated in the alleged constitutional deprivations due to their role in creating and implementing the prison policies which Plaintiff believes authorized the actions he challenges. *See* [#42] at 2-4. "Past input into the formulation of prison regulations . . . is a connection far too attenuated to support liability under § 1983." *Grimsley v. MacKay*, 93 F.3d 676, 680 (10th Cir. 1996). Other than the role of these three Defendants in creating and implementing prison regulations, Plaintiff does not describe with any specificity

14

allegations that these Defendants had any direct contact with Plaintiff or directed or were present during the placement of Plaintiff in the strip cell or in administrative segregation. The mere act of allegedly creating, adopting, or executing a challenged policy "amount[s] to nothing more than a formulaic recitation of the elements of a constitutional [violation]." *Iqbal*, 129 S. Ct. at 1951 (citing *Twombly*, 550 U.S. at 555) (internal quotations omitted). Such bare assertions fail to establish the personal participation requisite to state a Section 1983 claim. Therefore, the Court recommends that Defendants Zavaras, Jones, and Reed be dismissed with prejudice from this lawsuit.

**D.    Money Damages: Physical Injury Requirement**

42 U.S.C. § 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Section 1997e(e) bars compensatory damages for mental and emotional injuries suffered by a prisoner (regardless of the nature of the right asserted) in the absence of physical injury. *Harris v. Matthews*, 417 F. App'x 758, 763 n.9 (10th Cir. 2011) (unreported). However, this provision does not preclude recovery of nominal or punitive damages for violations of a prisoners' constitutional rights, or requests for declaratory or injunctive relief. *Id.* (citations omitted).

Plaintiff's physical injuries "need not be substantial" to satisfy § 1997e(e). *Denson v. Maifeld*, No. 09-cv-02087-WYD-KLM, 2011 WL 2714095, at *3 (D. Colo. July 13, 2011). "While the statute does not contain a definition of the 'physical injuries,' courts have now had fifteen years to explore the parameters of that phrase in the context of the PLRA." *Id.*

> Appeals courts confronting the issue have held that although a *de minimis* showing of physical injury does not satisfy the PLRA's physical injury requirement, an injury need not be significant to satisfy the statutory requirement. *See Mitchell v. Horn*, 318 F.3d 523, 536 (3d Cir. 2003) (surveying the authorities and finding "the courts of appeals have read

> 1997e(e) to require a less-than-significant-but-more-than-*de minimis* physical injury as a predicate to allowing the successful pleading of an emotional injury.")

*Id.* at *3-4 (quoting *Clifton v. Eubank*, 418 F. Supp. 2d 1243, 1245 (D. Colo. 2006)).

In his Response, Plaintiff explains that he requests compensatory damages for emotional and mental distress arising from his Claims One and Two.  [#42] at 8.  Plaintiff contends that he indeed suffered a physical injury while he was detained in the strip cell, because the shackles on his ankles "cut into his ankles deep enough to cause bleeding, was extremely painful and took awhile [sic] to heal."  *Id.*  Plaintiff further avers that the vitamin D deficiency he suffered as a result of being held in long-term administrative segregation constitutes a physical injury.  *Id.*  As Claim Two is time-barred, the Court limits its evaluation to Plaintiff's Claim One.

The Court finds that Plaintiff's allegation of physical injury arising from his ankles cuffed to the point of pain and of drawing blood meets the standard prescribed by § 1997e(e).  *See Custard v. Young*, No. 06-cv-01114-WYD-CBS, 2008 WL 791954, at *10 (D. Colo. Mar. 20, 2008) (painful and bleeding gums met physical injury requirement); *cf. Jones v. Cowens*, No. 09-cv-01274-MSK-MJW, 2010 WL 3239286, at *2-3 (D. Colo. Aug. 12, 2010) (bruising from handcuffs did not meet physical injury requirement).  However, Plaintiff alleges no physical injury as related to his remaining Claim Seven.  Therefore, the Court recommends that Plaintiff's claim for compensatory damages be limited to recovery related only to his Claim One.  However, as further explained below, the Court recommends finding that Plaintiff fails to state a plausible violation of his constitutional rights in Claim One, and Defendants are thus entitled to qualified immunity as to this Claim, thus mooting the issue of damages.

E.      **Qualified Immunity**

Plaintiff's Claims remaining before the Court are 1) Claim One against Defendants Roybal and Comfort, and 3) Claim Seven against Defendant Burke. Defendants argue that Plaintiff has not stated a plausible violation of his constitutional rights in these remaining Claims. *See* [#40]. As such, Defendants assert an entitlement to qualified immunity as to Claims One and Seven. *Id.* at 14-15. Plaintiff argues that Defendants are not entitled to qualified immunity, because they each participated in constitutional violations, which were governed by law existing at the time of the alleged violations. [#42] at 17-20. Plaintiff's positions on this issue are further explored below.

Qualified immunity, in certain circumstances, protects government officials from litigation when they are sued in their individual capacities. *See, e.g.*, *Harlow v. Fitzgerald*, 457 U.S. 800, 814-18 (1982). "[G]overnment officials . . . generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818.

A government official is entitled to qualified immunity from liability for civil damages when his or her allegedly unlawful conduct did not violate any of the plaintiff's statutory or constitutional rights that (1) were "clearly established" at the time of the conduct, and (2) would have been known to a reasonable person in the official's position. *Harlow*, 457 U.S. at 818 (stating that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that although qualified immunity determination involves a two-part inquiry, if the plaintiff fails either inquiry

reviewed in any order, no further analysis need be undertaken and qualified immunity is appropriate).  The Supreme Court has stated that "[f]or executive officials in general . . . our cases make plain that qualified immunity represents the norm."  *Id.* at 807.  Thus, a government official is entitled to qualified immunity in "[a]ll but the most exceptional cases." *Harris v. Bd. of Educ. of the City of Atlanta*, 105 F.3d 591, 595 (11th Cir. 1997).  The Court addresses each of Plaintiff's remaining Claims in turn.

### 1.    Claim One: Conditions of Confinement

In his Amended Complaint, Plaintiff asserts that on December 4, 2010, correctional facility officials broke up an altercation between him and another inmate.  [#33] at 7. Presumably on the same date, Defendant Roybal allegedly directed prison officials to hold Plaintiff in a "24 hour strip cell."  *Id.*  Plaintiff attests that he was then placed in "a cold cell with only his boxers."  Plaintiff describes the conditions of the strip cell as cold; constantly lit; absent of bedding, clothes, toilet paper, and soap; and containing a toilet stained with urine and feces.  *Id.* at 7-8.  Plaintiff contends that he had to exercise to keep warm, that he did not sleep, that he was shackled for the first three hours of detainment in the strip cell, that he came in contact with other prisoners' urine and feces, and that the detainment in the strip cell exacerbated his bipolar disorder and "symptoms of obsessive compulsive disorder."  *Id.*  Plaintiff states that he was in the strip cell for a "24 hour period."  *Id.* at 8.

In his Response, Plaintiff contends that the conditions of the strip cell violate his Eighth Amendment right to humane conditions of incarceration.  [#42] at 9.  Plaintiff suggests that his placement in the strip cell was undeserved, as he was compliant with the prison officials who broke up the altercation.  *Id.* at 10.  Plaintiff states that the totality of the circumstances, including considering his "physical and psychological suffering," constitutes an Eighth Amendment violation.  *Id.* at 10-11.  Plaintiff references "possible effects" of

18

detainment in the strip cell, but does not describe any harm he directly suffered.  *Id.* at 11.

Defendants argue that the allegations in Plaintiff's Claim One are not cruel and unusual within the meaning of the Eighth Amendment. [#40] at 11.  Defendants suggest that even if the factual description stated by Plaintiff constituted a deprivation of life's necessities, the period of 24 hours in the strip cell is tolerable.  *Id.*  The Court agrees.

The Eighth Amendment provides protection against cruel and unusual punishment. This protection imposes a duty on prison officials to maintain humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and a duty to provide inmates with reasonable protection from serious bodily harm.  *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008).

"To prevail on a 'conditions of confinement' claim under the Eighth Amendment, an inmate must establish that (1) the condition complained of is 'sufficiently serious' to implicate constitutional protection, and (2) prison officials acted with 'deliberate indifference' to inmate health or safety."  *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (internal quotation marks omitted).  As to the first requirement, an inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.  *Id.*

The deliberate indifference requirement provides that a prison official must act wanton or willfully and have a "sufficiently culpable state of mind."  *Farmer*, 511 U.S. at 834-35 (quotation omitted).  "[T]he Supreme Court has explained that 'deliberate indifference entails something more than mere negligence ... [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result.' "  *DeSpain*, 264 F.3d at 972 (quoting *Farmer*, 511 U.S. at 835).  "The Court defined this 'deliberate indifference' standard as equal to 'recklessness,' in which 'a person

disregards a risk of harm of which he is aware.' " *Id.* (quoting *Farmer*, 511 U.S. at 836-37).

The test for deliberate indifference is both objective and subjective. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). "The objective component of the test is met if the 'harm suffered rises to a level sufficiently serious to be cognizable under the Cruel and Unusual Punishment Clause' of the Eighth Amendment." *Id.* (quoting *Mata v. Saiz*, 427 F.3d 745, 752-53 (10th Cir. 2005)). To prevail on the first prong, even severe restrictions do not satisfy the objective component if the inmate is not deprived of "the minimal civilized measure of life's necessities." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998). The Tenth Circuit has concluded that the conditions of confinement including "lockdown 23 hours per day in extreme isolation," "indefinite confinement," and "limited ability to exercise outdoors" do not, individually or in concert, violate the Eighth Amendment. *See Ajaj v. United States*, 293 F. App'x 575, 582-84 (10th Cir. 2008).

Furthermore, "[a]n important factor in determining whether conditions of confinement meet constitutional standards is the length of the incarceration." *Barney v. Pulsipher*, 143 F.3d 1299, 1311 (10th Cir. 1998). The Tenth Circuit recognized that "a filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months." *Barney*, 143 F.3d at 1311-12 (internal quotation and citation omitted). In *Barney*, the Tenth Circuit held that "a filthy cell, inadequate lighting and ventilation, lack of enclosures around the shower and toilet, unappetizing food, and no access to recreational facilities," for an undefined period of time, did not "rise to the level of a constitutional violation." *Id.*

Here, the Court finds that Plaintiff fails to state a plausible violation of the Eighth Amendment premised on his 24-hour detention in a strip cell due to the brevity of the conditions as well as the absence of harm. "Courts have repeatedly held that similar and

far worse conditions fail to state a claim because of the brief nature of the incarceration."

*Barney*, 143 F.3d at 1312 (citing *see, e.g.*, *Whitnack v. Douglas Cnty.*, 16 F.3d 954, 958 (8th Cir. 1994) (deplorably filthy and patently offensive cell with excrement and vomit not unconstitutional because conditions lasted only for 24 hours); *White v. Nix*, 7 F.3d 120, 121 (8th Cir. 1993) (eleven day stay in unsanitary cell not unconstitutional because of relative brevity of stay and availability of cleaning supplies); *Harris v. Fleming*, 839 F.2d 1232, 1235-36 (7th Cir. 1988) (five day stay in "filthy, roach-infested cell" not unconstitutional)). Thus, the conditions complained of do not meet the first prong required for an Eighth Amendment violation, because objectively, 24 hours in the strip cell under the conditions described by Plaintiff, although presumably uncomfortable, are not sufficiently serious to implicate constitutional protections.

Further, Plaintiff cannot meet the second prong required for an Eighth Amendment violation.  To prevail on the subjective component of the deliberate indifference test, an inmate must show that the prison official: (1) knew of a substantial risk of serious harm posed to the inmate and (2) disregarded that risk by failing to take reasonable steps to abate the risk. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006).  Again, Plaintiff refers to the possibility of harm resulting from the conditions of the strip cell, but does not allege actual harm resulting from the brief confinement.  Plaintiff fails to show that either Defendant Roybal or Comfort knew of and disregarded a substantial risk of serious harm to Plaintiff.  Therefore, the Court finds that Plaintiff fails to state a plausible Eighth Amendment violation in his Claim One, and Defendants Roybal and Comfort are entitled to qualified immunity.

**2.     Claim Seven: Restitution**

Plaintiff asserts that Defendant Burke ordered Plaintiff to pay $3.60 in restitution, resulting from a Code of Penal Discipline ("COPD") hearing held on December 16, 2010. [#33] at 20.  The $3.60 paid for a spit mask used "on Plaintiff when transferring him to intake even though he has never spit on a guard nor was he resisting."  *Id.*  Plaintiff believes that the imposition of the restitution amount violated his Fourth and Fourteenth Amendment rights.  *Id.*

Defendants argue that this punishment (*i.e.*, the $3.60 in restitution resulting from a disciplinary hearing) is not an atypical and significant hardship, thus Plaintiff does not state a colorable claim for relief in his Claim Seven.  [#40] at 14.  Plaintiff expounds on his allegations in his Response, explaining his belief that the Colorado Department of Corrections administrative regulation authorizing the imposition and collection of disciplinary restitution violates the separation of powers doctrine.  [#42] at 16.  Plaintiff clarifies that he brings this Claim pursuant to his procedural due process rights; Plaintiff does not contest the amount of the restitution, but challenges the restitution as an "illegal seizure."  *Id.* at 17.

The Court "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them."  *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).  To this end, the Court notes the well-established law that prison management functions should be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively.  *See, e.g.*, *Meachum v. Fano*, 427 U.S. 215 (1976).  The Tenth Circuit has stated that it "abhor[s] any situation or circumstance requiring the intervention of the federal courts in matters involving

the administration, control and maintenance by the sovereign states of their penal systems. It is a delicate role assigned to the federal courts to display that restraint so necessary 'in the maintenance of proper federal-state relations.'" *Battle v. Anderson*, 564 F.2d 388, 392 (10th Cir. 1977) (citation omitted).  As such, "sweeping intervention in the management of state prisons is rarely appropriate when exercising the equitable powers of the federal courts." *Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994) (citations omitted).

"The Due Process Clause guarantees due process only when a person is to be deprived of life, liberty, or property." *Chambers v. Colo. Dep't of Corr.*, 205 F.3d 1237, 1242 (10th Cir. 2000) (citation omitted).  A plaintiff must make two showings in order to proceed on a procedural due process claim.  *See Bartell v. Aurora Public Schs.*, 263 F.3d 1143, 1149 (10th Cir. 2001).  First, he must show that he possesses a protected interest. *See id.*; *Veile v. Martinson*, 258 F.3d 1180, 1184–85 (10th Cir. 2001).  Second, he must show that the procedures used in addressing his protected interest were inadequate under the circumstances.  *See Bartell*, 263 F.3d at 1149.

Defendants do not dispute that Plaintiff has a protected property interest in his prison funds, thus the Court accepts, for purposes of this Recommendation, that such protected interest exists here in satisfaction of the first prong of the due process analysis.  Regarding the second prong, Plaintiff does not challenge the process of the disciplinary hearing that resulted in the imposition of restitution.  *See* [#33] at 20.  He simply challenges the underlying authority relied on by Defendant Burke in imposing and collecting the restitution. However, "[t]hat restitution is authorized here by administrative regulation rather than by statute does not demonstrate that the [Colorado Department of Corrections] is acting in violation of any statute or constitutional provision, given the broad grant of discretion and lack of statutory limitation in this regard." *Freeman v. Carroll*, No. 06-cv-00405-MSK-KMT,

23

2011 WL 5826585, at *5 (D. Colo. Nov. 18, 2011). None of the cases cited by Plaintiff in his Response indicate otherwise.[4] Therefore, the Court concludes that Plaintiff fails to state a plausible constitutional violation in Claim Seven, and Defendant Burke is entitled to qualified immunity.

## F.    Official Capacity Claims

To the extent that Plaintiff fails to establish the violation of any constitutional right as explained above, Plaintiff's request for injunctive relief against Defendants in their official capacities should also be dismissed. *Dawson v. Johnson*, 266 F. App'x 713, 715-17 (10th Cir. 2008) (unpublished) (holding that dismissal of both official and individual capacity claims against an individual is appropriate where plaintiff failed to show particular defendant violated plaintiff's constitutional rights); *Ajaj v. Fed. Bureau of Prisons*, No. 08-cv-02006-MSK-MJW, 2011 WL 902440, at *4 n.6 (D. Colo. Mar. 10, 2011) (unpublished) (same).

## G.    No Leave to Amend

The dismissal of an action "pursuant to Rule 12(b)(6) is a resolution on the merits and is ordinarily prejudicial." *Okusami v. Psychiatric Inst. of Wash.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992); *accord Brierly v. Schoenfeld*, 781 F.2d 838 (10th Cir. 1986) (affirming a district court decision to dismiss with prejudice an action brought under 42 U.S.C. § 1983); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice"); *Tepper v. Van Dam*, 974 F.2d 1345, 1992 WL 219037, at *3-4 (10th Cir. 1992) (unpublished table decision) (relying on *Okusami*, *Brierly*, and *Cortec* to affirm

---

[4] To the extent Plaintiff brings his Claim Seven pursuant to the Fourth Amendment, "[a]ny Fourth Amendment violation . . . is subsumed by the due process claim because if the [penalty was] imposed in a constitutional proceeding, [it was] reasonable." *Freeman v. Watkins*, No. 06-cv-00405-MSK-KMT, 2010 WL 1790427, at *4 n.6 (D. Colo. May 4, 2010).

dismissal of an action with prejudice).   However, due to heightened concerns when the plaintiff is proceeding *pro se*, dismissal with prejudice is only appropriate "where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend."  *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *see also Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.") (citing *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1126 (10th Cir. 1997))).  Even as courts are careful to protect the rights of *pro se* plaintiffs, they typically find that granting the opportunity to amend would be futile.  *See, e.g., Arocho*, 367 F. App'x at 955 (describing a set of circumstances under which giving a plaintiff an opportunity to amend his complaint would not be futile as "unique"); *Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (prejudice should not attach to a dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise *substantial* issues" (emphasis added)); *but see Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) ("[O]rdinarily the dismissal of a *pro se* claim under Rule 12(b)(6) should be without prejudice, and a careful judge will explain the pleading's deficiencies so that a prisoner with a meritorious claim can then submit an adequate complaint." (citations omitted)).

Here, no amendment to Plaintiff's Amended Complaint would bring his Claims Two, Three, Four, Five, and Six within the statute of limitations.  Nor would amendment change the law demonstrating that a 24-hour incarceration in a strip cell (Claim One) or that the imposition of minimal restitution resulting from an unchallenged disciplinary hearing (Claim Seven) are not in violation of Plaintiff's constitutional rights.  Further, amendment would not implicate personal liability on behalf of prison administrators responsible for creating and

implementing regulations.  Thus, no amendment to the Amended Complaint could alter the Court's conclusions stated herein, and the Court recommends dismissal be with prejudice and without leave to amend.

## IV.  Conclusion

Accordingly, the Court respectfully **RECOMMENDS** finding that:

1) Plaintiff's Claims Two, Three, Four, Five, and Six are barred by the applicable statute of limitations and should be dismissed with prejudice, and Defendants Hildebrand, McCormick, Proffit, Dent, and Cross should be dismissed with prejudice for the same reason;

2) Defendants Zavaras, Jones, and Reed should be dismissed with prejudice due to Plaintiff's failure to plead adequate personal participation on part of these Defendants; and

3) Defendants Roybal, Comfort, and Burke are entitled to qualified immunity as to Plaintiff's remaining Claims One and Seven due to Plaintiff's failure to demonstrate a plausible constitutional violation, thus Claims One and Seven should be dismissed with prejudice.

IT IS FURTHER **RECOMMENDED** that **Defendants' Motion to Dismiss** [Docket No. 40; Filed August 1, 2011] be **GRANTED**, and Plaintiff's Amended Complaint [#33] be **DISMISSED WITH PREJUDICE** for the reasons stated herein.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo

26

review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  January 23, 2012

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge